IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DERRELL B. WILLIAMS, #305-646         *

      Plaintiff         *

      v.         *   Civil Action No. L-10-2600

CORRECTIONAL MEDICAL SERVICES,         *
INC.[1]
               *
      Defendant
            * * *

**MEMORANDUM**

**I.   Procedural History**

On September 21, 2010, the Clerk received for filing a 42 U.S.C. § 1983 civil rights Complaint submitted by Derrell B. Williams ("Williams") seeking money damages and alleging that medical personnel at North Branch Correctional Institution ("NBCI") were refusing to treat headaches and vision problems resulting from a December 2, 2009, attack by a fellow prisoner. ECF No. 1 at 4–5.

Currently pending before the Court is the Motion of the Defendant, Correctional Medical Services, Inc. ("CMS"), to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 11. Williams has likewise filed a Motion for Summary Judgment. ECF No. 9.[2] The issues have been comprehensively briefed, and no hearing is deemed necessary. See Local Rule 105.6. (D. Md. 2010). For reasons to follow, the Motion filed by CMS, treated as a Motion for Summary Judgment, shall be granted.

**II.   Standard of Review**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief

---

[1] The Clerk shall amend the caption to reflect that Correctional Medical Services, Inc. is the medical care provider at North Branch Correctional Institution.

[2] Defendant's request for an extension of time (ECF No. 10) shall be granted nunc pro tunc.

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corporation v. Twombley, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964–65 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people." Id. at 557–58 (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) (internal quotation marks omitted)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." Takacs v. Fiore, 473 F. Supp. 2d 647, 651 (D. Md. 2007).

Under the December 10, 2010 revisions to Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)).

As a prisoner claiming denial of medical care in violation of the Eighth Amendment, Plaintiff must prove two elements, one objective and one subjective. First, he must satisfy the objective element by illustrating a serious medical condition. See Hudson v. McMillian, 503 U.S. 1, 9 (1992); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, Plaintiff must then prove the subjective element by showing "deliberate indifference" on the part of prison officials or health care personnel. See Wilson v. Seiter, 501 U.S. 294, 303 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Id. at 837. Health care staff are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844; see also Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

## III. Analysis

As a preliminary matter, CMS argues that as a corporate entity it cannot be held liable under § 1983. To the extent the Complaint names CMS solely upon vicarious liability, Circuit law is clear. It is well settled that a claimant may not recover against a municipality on a respondeat superior theory under 42 U.S.C. § 1983. See Monell v. Dep't of Social Services, 436 U.S. 658, 690–95 (1978). Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 727–28 (4th Cir. 1999); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982). While CMS is entitled to dismissal on this ground alone, the Court will proceed to Williams's substantive allegations.

Williams claims he has been denied proper medical care since his assault on December 2, 2009. The medical record provides a somewhat different picture. Williams was brought to the dispensary on December 2, 2009 after he was hit in the back of the head during an outdoor recreation period. A small laceration on the back of the head was cleaned and the wound closed

with Dermabond, a liquid skin adhesive. Antibiotics and gauze bandages were applied, and Williams was advised to return to the dispensary if he needed further treatment. ECF No. 11, Exhibit A, ¶ 3. Williams, who has a history of asthma, was seen in the Chronic Care Clinic on three occasions between December of 2009 and the time he filed this action, in September of 2010. He did not complain of ongoing problems with headaches or visual disturbances from the head injury during those visits. Id., Exhibit A, ¶ 4.

On September 2 and 3, 2010, Williams submitted sick call forms complaining of severe migraine headaches. He attributed the headaches to the December 2, 2009, injury and stated he had been suffering headaches since that time but they were becoming more painful. On September 6, 2010, Williams submitted a sick call form complaining of visual impairment, which he again linked to the December 2, 2009 injury. That same day Williams was examined by Steven Bray, R.N. Williams did not complain of vision problems but stated the headaches always occurred at the back of his head. On September 9, 2010, Dennis Martin, R.N., informed Williams that he could purchase Motrin or Tylenol at the commissary to treat his headaches, and that he should return to the dispensary if the headaches continued. On September 20, 2010, Dr. Majd Arnaout performed a regularly scheduled examination for Williams's asthma. Williams did not complain about headaches or vision problems during that visit. Id., Exhibit A, ¶¶ 5–6.

On October 16, 2010, Williams also complained of migraine headaches, impaired vision, and dizziness attributed to the injury on December 2, 2009. He was examined by Monica Metheny, R.N. Metheny referred Williams to a physician and ophthalmologist for further evaluation and treatment. Williams refused to attend his November 11, 2010, appointment with the ophthalmologist. Id., Exhibit A, ¶¶ 7–8.

On November 13, 2010, Williams submitted a sick call form complaining of migraines. On November 17, 2010, Karen Myers, R.N., examined him and found his blood pressure elevated. Myers referred Williams to Physician's Assistant Lisa Schindler, who prescribed Excedrin Migraine ("EM") for headaches. Id., Exhibit A, ¶ 9.

On November 24 and December 2, 2010, Williams submitted sick call forms complaining that the EM did not help his headaches. Schindler examined Williams on December 2, 2010, noted a slight elevation of blood pressure, and informed Williams that the elevated blood pressure could be the cause of the headaches. Williams refused to start treatment for hypertension, so Schindler ordered blood pressure checks for three weeks, renewed his EM

medication, and prescribed Naprosyn, a non-steroidal anti-inflammatory medication, for pain. Id., Exhibit A, ¶ 10.

On December 6, 2010, Dr. Gregory Taylor examined Williams and noted that as with many migraine sufferers, the use of EM made Williams's headaches worse, due to "rebound." No abnormalities of the eyes or ears were found. Dr. Taylor prescribed Elavil, an antidepressant medication also used to treat migraine headaches, and renewed the Naprosyn prescription. EM was discontinued. Id., Exhibit A, ¶ 11.

Based upon the documented evidence presented to Court, Williams received adequate treatment for his initial injury as well as follow-up care for complaints of migraine headaches and vision problems. Williams refused to treat a possible blood pressure problem and refused evaluation and treatment by an eye care professional. Williams's complaints were not ignored to a constitutionally significant degree. He has been prescribed appropriate medications to treat his migraines.

Williams has failed to come forward with opposition materials refuting the Defendant's affirmations. His dissatisfaction with treatment amounts to nothing more than a disagreement between medical staff and an inmate as to a course of treatment, and does not rise to the level of a constitutional injury. See Davis v. Greene, 2009 WL 3064106, at *13 (S.D.W.Va. 2009) (recognizing that "disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review."). Given the objective findings regarding Williams's injury and the conservative and measured response by medical personnel to his subjective complaints of pain, Williams has failed to show a genuine issue of material fact as to his entitlement to relief. Accordingly, Defendant's Motion for Summary Judgment will be granted.

Dated this 14th day of April 2011.

/s/
_____
Benson Everett Legg
United States District Judge